**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PAGET ALLEN** | **Case No.** |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| **EDDYSTONE BOROUGH, ROBERT PUGH, and JOHN DOE 1-10** | |
| *Defendants.* | |

## COMPLAINT − CIVIL ACTION

Plaintiff, Paget Allen (hereinafter "Plaintiff"), by and through her attorneys, Saltz Mongeluzzi Bendesky PC, hereby asserts the following complaint against Defendants, Eddystone Borough, Robert Pugh, individually and as a police officer for the Eddystone Borough Police Department ("Defendant Pugh"), and John Doe 1-10, individually and as police officers for the Eddystone Borough Police Department, and in support thereof, avers as follows:

## PARTIES

1. Plaintiff, Paget Allen, is an adult individual who is and has been, at all times relevant to this Complaint, a resident of the Commonwealth of Pennsylvania.

2. Defendant, Eddystone Borough, is a Municipality of the Commonwealth of Pennsylvania and a governmental authority that owns, operates, manages, directs, and controls the Eddystone Borough Police Department, which employed police officers, including Defendant Pugh and John Doe 1-10, at all times relevant to this Complaint.

3. Defendant, Robert Pugh, is an adult individual who is and has been, at all times relevant to this Complaint, a police officer with the Eddystone Borough Police Department, and is sued in this matter both in his individual capacity and as a police officer for Eddystone Borough.

4.      Defendants, John Doe 1-10, are adult individuals who are and have been, at all times relevant to this Complaint, police officers with the Eddystone Borough Police Department, and are being sued in both their individual capacities and as police officers for the Eddystone Borough Police Department.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this matter pursuant to 28. U.S.C. § 1331, as Plaintiff's claims arise under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

6.      Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate all pendent state law claims.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### THE IMPROPER PURSUIT THAT RESULTED IN
### THE ACCIDENT OF OCTOBER 10, 2024

8.      On Thursday, October 10, 2024, at approximately 5:10 p.m., a speeding Nissan Maxima bearing VIN 1N4AA6AP0JC400297 (hereinafter the "Suspect Vehicle"), blew through a red light at 103 miles per hour and broadsided Plaintiff's truck as she attempted to lawfully travel through the intersection of Industrial Highway and Wanamaker Avenue in Essington, Pennsylvania, causing Plaintiff's truck to explode upon impact and causing Plaintiff to suffer horrific and catastrophic injuries.

9.      At the time of the high-speed collision, the Suspect Vehicle was fleeing from Defendant, Eddystone Borough's, police officers including, but not limited to, Defendant Pugh and/or Defendants, John Doe 1-10 (hereinafter the "Defendant Police Officers"), who had

previously started and engaged in an improper high-speed pursuit of the Suspect Vehicle, and then improperly continued that dangerous pursuit for miles on/around Industrial Highway through highly-trafficked and populated areas during evening rush hour.

10.    Upon information and belief, prior to engaging in, and then continuing, the high-speed chase, the Defendant Police Officers had observed the Suspect Vehicle in the Harrah's Casino parking lot in Chester, Pennsylvania around 5:00 p.m., displaying a license plate number that was reported stolen in Philadelphia County more than two months earlier.

11.    At that time,  the Defendant Police Officers attempted to perform a vehicle stop of the Suspect Vehicle; however, the Defendant Police Officers were unsuccessful and, as a result, initiated a high-speed pursuit of the Suspect Vehicle that began in the public parking lot and continued for miles through heavily trafficked residential and commercial areas.

12.    Upon information and belief, prior to the initiation of their high-speed pursuit of the Suspect Vehicle, the Defendant Police Officers did not have reasonable suspicion that the Suspect Vehicle and/or its driver/occupants had engaged in any violent, felonious conduct or had other justifiable reason to engage in the high-speed pursuit.

13.    At all times relevant hereto, the Suspect Vehicle was operated by Deja K. Richardson (hereinafter "Richardson").

14.    Richardson was not the owner of the Suspect Vehicle, nor was the vehicle registered to her name.

15.    As a result, upon information and belief, before engaging in the high-speed pursuit and throughout the duration of the high-speed pursuit, the Defendant Police Officers were unaware of Richardson's identity and had no information about the actual identity of the driver/occupants

of the Suspect Vehicle, other than the fact that the driver was operating a vehicle with a license plate number that was reported to have been stolen in Philadelphia more than two months earlier.

16. After initiating the pursuit of the Suspect Vehicle, the Defendant Police Officers proceeded to engage in a high-speed pursuit of the Suspect Vehicle through heavily trafficked and populated residential and commercial areas, all during evening rush hour.

17. As soon as the Suspect Vehicle "took off" in the public parking lot, the Defendant Police Officers knew or should have known that their intentional and continued high-speed pursuit of the Suspect Vehicle was likely to injure innocent motorists, bystanders, and/or other individuals in vehicles traveling on Industrial Highway or the intersecting roads, such as Plaintiff.

18. As the pursuit continued for miles, the Suspect Vehicle reached speeds in excess of 100 miles per hour, disregarded traffic control signals, and successfully avoided other police intervention that was intended to end the pursuit – such as the Federal Stinger Spike System deployed on Industrial Highway – all demonstrating to the Defendant Police Officers that the Suspect Vehicle would continue to engage in increasingly-reckless driving to avoid apprehension.

19. Rather than terminate the pursuit, in conscious disregard of a great risk of harm during the course of the pursuit and contrary to the vehicle pursuit policies that were or should have been promulgated by Defendant, Eddystone Borough, the Defendant Police Officers continued to pursue the Suspect Vehicle at extremely high rates of speed down Industrial Highway, in a heavily trafficked and populated area with a speed limit of 35 miles per hour.

20. Upon information and belief, the Defendant Police Officers also failed to keep their patrol vehicle at an appropriate and safe distance from the Suspect Vehicle, which increased both the operator's desire to flee and the foreseeable risk of a catastrophic collision between the Suspect Vehicle and any other nearby vehicles and/or persons, including Plaintiff.

21.     During their high-speed pursuit of the Suspect Vehicle, the Defendant Police Officers failed to discontinue the pursuit despite knowing that the value of apprehending the driver/occupants of the Suspect Vehicle was significantly outweighed by the danger the pursuit posed to the public, including innocent third-party drivers on the roadway such as Plaintiff.

22.     During their high-speed pursuit of the Suspect Vehicle, the Defendant Police Officers failed to discontinue the high-speed pursuit despite the Suspect Vehicle's clearly visible license plate number, which rendered the Suspect Vehicle easily identifiable for later apprehension or prosecution.

23.     Unsurprisingly, the Defendant Police Officers' high-speed pursuit of the Suspect Vehicle ultimately ended in a catastrophic automobile accident with Plaintiff – a foreseeable, innocent, third-party driver on the roadway – as she attempted to lawfully travel on Wanamaker Avenue, through the intersection with Industrial Highway, on her way to work.

24.     As Plaintiff attempted to travel on Wanamaker Avenue across Industrial Highway, at approximately 5:10 p.m., the Suspect Vehicle broadsided Plaintiff's truck.

25.     The speed and force of the collision caused Plaintiff's truck to explode, causing the truck to roll and to smash across a nearby utility pole.

26.     Evidence from the Suspect Vehicle confirmed that, at the time of impact, the Suspect Vehicle was traveling 103 miles per hour.

27.     Upon information and belief, during the high-speed pursuit, the Defendant Police Officers were intentionally traveling at the same high-rate of speed as the Suspect Vehicle, as their patrol car kept pace with the vehicle during the pursuit.

28.     As a result of the crash, Plaintiff sustained excruciating, permanent, and life-altering injuries and damages, including, but not limited to: multiple pelvic fractures – right

inferior pubic ramus, right and left pubic rami with extension into anterior acetabulum, left pubic ramus, sacral alar with widening of the right sacroiliac joint, and S1-S4 sacral foramina; L1 compression fracture; transverse process fractures at C7, T1, and L1-L5; T2 endplate depression fracture; pulmonary lacerations/contusions; pneumothorax; bilateral rib fractures; scaphoid and radial head fractures; radius and ulna fracture; left scapula fracture; retroperitoneal hematoma; aching, throbbing, sharp and shooting severe pain; extensive physical therapy; constant and chronic pain; stress and anxiety; scarring, depression, despair, despondency, anxiety, and mental and emotional pain and suffering; loss of life's pleasures, past, present and future; loss of earnings and wages and loss of earnings capacity, past, present and future; hospital, medical and rehabilitation expenses past, present and future, including medical equipment, supplies and other medical care and treatment; other psychological, psychiatric, and neurological injuries, the full extent of which are yet to be determined and some or all of which may be permanent in nature.

a. Plaintiff has in the past required, continues to require, and will in the future require, medical treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempt to alleviate and/or cure her condition.

b. Plaintiff has in the past and continues to suffer pain, disfigurement, scarring, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on her ability to engage in normal activities and pleasures of life, and other intangible losses.

c. Plaintiff has been prevented and will be prevented in the future from performing her usual duties, activities, occupations and avocations and has suffered a loss of earnings and a loss of earning capacity.

## DEFENDANT, EDDYSTONE BOROUGH'S, FAILURE TO ADOPT, IMPLEMENT, AND ENFORCE PROPER EMERGENCY VEHICLE RESPONSE POLICIES

29. At all times relevant hereto, Pennsylvania law has required that each police department within the Commonwealth "develop and implement a written emergency vehicle

response policy governing the procedures under which a police officer should initiate, continue, and terminate a motor vehicle pursuit." 75 Pa.C.S.A. § 6342.

30.     Under § 6342(a), the policy "may be the model policy endorsed by a national or state organization or association of police chiefs or police officers."

31.     Additionally, § 6342(a) requires that the policy incorporate the guidelines set forth in § 6342, which specifically demands that each "shall include, but not be limited to, the following procedural elements":

> (1) Decision making criteria or principles for initiation of pursuit. These criteria or principles may include, but not be limited to:
>
>> (i) The potential for harm or immediate or potential danger to others if the fleeing individual or individuals escape.
>>
>> (ii) The seriousness of the offense committed or believed to have been committed by the individual or individuals attempting to flee.
>>
>> (iii) Safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.
>
> (2) Responsibilities of the pursuing officers.
>
> (3) Responsibilities for the communications center.
>
> (4) Responsibilities of the field supervisor.
>
> (5) Traffic regulations during pursuit, including, but not limited to, the use of emergency equipment, audio signals and visual signals.
>
> (6) Pursuit tactics.
>
> (7) Roadblock usage.
>
> (8) Communication and coordination of pursuit protocol for interjurisdictional pursuit.
>
> (9) Decision making criteria or principles for termination of pursuit. These criteria or principles may include, but not be limited to, safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.

75 Pa.C.S.A. § 6342(c).

32.     Accordingly, at all times relevant hereto, Defendant, Eddystone Borough, was required to develop and implement vehicle pursuit policies that encompassed the guidelines above and reasonably should have had policies that met or exceeded endorsed model policies.

33.     Had Defendant, Eddystone Borough, adopted, implemented, and enforced a proper pursuit policy, the Defendant Police Officers would not have pursued the Suspect Vehicle and would not have caused the collision that resulted in Plaintiff's horrific and catastrophic injuries.

34.     Upon information and belief, Defendant, Eddystone Borough, negligently failed to adopt such proper policy or in the alternative, failed to properly implement and enforce such a policy.

35.     Upon information and belief, even if adequate policies were in place, Defendant, Eddystone Borough, by and through its police officers, including the Defendant Police Officers, had a custom and practice of disregarding adopted vehicle pursuit policies.

36.     This custom and practice is evident from, among other things, the Defendant Police Officers' conduct during their pursuit of the Suspect Vehicle, which failed to conform to any reasonable pursuit policy and fell far below the standard of care required of police officers involved in a vehicle pursuit, and from historical statistics of Defendant, Eddystone Borough's, police officers repeatedly initiating police pursuits for suspected offenses that did not amount to violent, felonious acts, including, as here, numerous pursuits that were initiated solely because of "stolen or suspected stolen vehicle".[1]

37.     Upon information and belief, as evidenced, in part, by the Defendant Police Officers' actions and omissions during their pursuit of the Suspect Vehicle, even if Defendant, Eddystone Borough, maintained adequate pursuit policies, Defendant, Eddystone Borough's,

---

[1] *See* Pennsylvania State Police, Police Pursuit Reporting System, available at https://www.policepursuits.pa.gov/ (site last visited August 3, 2026)

custom and practice, by and through its police officers, including the Defendant Police Officers, was to consciously disregard, and thus to act with deliberate indifference toward, the policies they had or should have had in place and to sanction or condone, expressly or implicitly, their respective police officers' violations of the constitutional rights of innocent motorists and bystanders when engaging in vehicle pursuits.

38.    Due to Defendant, Eddystone Borough's, failure to properly enforce an adequate pursuit policy, or in the alternative, its failure to adequately supervise police officers to ensure that their pursuit policy, if any existed, was properly followed, Plaintiff  sustained the damages set forth herein.

## THE DEFENDANT POLICE OFFICERS' FAILURE TO FOLLOW MODEL VEHICLE PURSUIT POLICIES

39.    Prior to initiating the pursuit of the Suspect Vehicle, the Defendant Police Officers did not reasonably believe, nor did they possess information to support any such belief, that the danger to the public if the driver/occupants of the Suspect Vehicle remained at large outweighed the immediate danger posed to the public, including Plaintiff,  as a result of the high-speed police pursuit itself.

40.    Upon information and belief, the Defendant Police Officers had no reason to believe that their decision to pursue the Suspect Vehicle after it left the Harrah's parking lot was necessary to prevent death or serious bodily injury to another person, as would be required by an adequate police pursuit policy.

41.    Upon information and belief, the Defendant Police Officers did not have probable cause to believe that the Suspect Vehicle's driver/occupants had committed, or had attempted to commit, a forcible felony or that the driver/occupants possessed a deadly weapon other than the vehicle that was being driven.

42.     During the pursuit of the Suspect Vehicle, the Defendant Police Officers failed to consider or appreciate, nor did they exhibit any actions supporting the conclusion that they did consider or appreciate, that the seriousness of the offense giving rise to their initial attempt to stop the Suspect Vehicle did not amount to a violent, felonious act.

43.     During the pursuit of the Suspect Vehicle, the Defendant Police Officers failed to consider or appreciate, nor did they exhibit any actions supporting a conclusion that they did consider or appreciate, any of the immediately present factors that their policy regulations required or should have required them to consider, including (a) the nature of the highly-trafficked residential and commercial area of the pursuit; (b) that it was rush hour at the time of the pursuit; (c) that the Suspect Vehicle could be easily traced and identified through the clearly visible license plate numbers; and (d) that they were witnessing the operator of the Suspect Vehicle violate numerous traffic laws, including speed limits and traffic signals.

44.     During the pursuit of the Suspect Vehicle prior to the crash, the Defendant Police Officers failed to discontinue and terminate the pursuit despite knowing that the value of apprehending the driver/occupants of the Suspect Vehicle dwarfed in comparison to the significant and foreseeable danger posed to the public, including Plaintiff, by the police pursuit persisting.

45.     During the pursuit of the Suspect Vehicle prior to the crash, the Defendant Police Officers failed to discontinue and terminate the pursuit of the Suspect Vehicle despite the fact that their attempted means to stop the fleeing Suspect Vehicle were not working and the foreseeable danger posed to the public, including Plaintiff, of the police pursuit persisting.

46.     Apprehension of the Suspect Vehicle and its driver/occupants was not an emergency that permitted the Defendant Police Officers to engage in the inherently risky and dangerous high speed police pursuit that they ultimately engaged in on October 10, 2024.

47.    At all times relevant hereto, pursuant to their employment with Defendant, Eddystone Borough, the Defendant Police Officers had an obligation to protect individuals, including Plaintiff, against dangers that they created themselves.

48.    As detailed above and throughout this Complaint, the Defendant Police Officers' actions, including their unreasonable and erroneous decision to initiate and continue pursuit of the Suspect Vehicle despite the circumstances, was with such conscious disregard for the great risk of harm to the public, including innocent third-party drivers like Plaintiff, that it shocks the conscience.

49.    As detailed above and throughout this Complaint, the Defendant Police Officers' actions, including their unreasonable and erroneous decision to initiate and continue pursuit of the Suspect Vehicle despite the circumstances, displayed such brazen and bold, intentional misuse of their police-issued vehicle in violation of the policies, regulations, and guidelines that it shocks the conscience.

50.    It was foreseeable that, by pursuing the Suspect Vehicle, the Defendant Police Officers' conduct would cause the Suspect Vehicle to flee, and it was also foreseeable that, by pursuing the Suspect Vehicle through a highly-trafficked residential and commercial area, the Defendant Police Officers would spark a high-speed chase that foreseeably could and would result in Plaintiff's vehicle being by the Suspect Vehicle.

51.    As a result of the Defendant Police Officers' improper pursuit, Plaintiff sustained the damages set forth herein.

52.    The acts and omissions of Defendants directly and proximately caused the injuries and damages suffered by Plaintiff.

## COUNT I: 42 U.S.C. § 1983
## STATE-CREATED DANGER IN VIOLATION OF THE FOURTEENTH AMENDMENT

### PLAINTIFF, PAGET ALLEN v. DEFENDANTS, ROBERT PUGH AND JOHN DOE NOS. 1-10

53.     The preceding paragraphs and allegations stated above are incorporated by reference as though fully set forth herein.

54.     At all times relevant hereto, the Defendant Police Officers were police officers employed by Defendant, Eddystone Borough, and were acting under color of state law; therefore, the Defendant Police Officers are subject to suit pursuant to 42 U.S.C. § 1983 for the actions they undertook while acting under the color of state law.

55.     The Defendant Police Officers' conduct, as set forth above and herein, evinces a state-created danger.

56.     The facts set forth above did not present the Defendant Police Officers with a hyper-pressurized environment, a true exigency, or a situation requiring hurried deliberation; the Defendant Police Officers had time to consider whether to engage in the inherently risky behavior described above.

57.     By engaging in an unjustified and improper high-speed police pursuit in a highly-trafficked and populated area, during evening rush hour, without reasonable belief that the Suspect Vehicle's driver/occupants committed a requisite offense and/or posed an immediate threat to public safety, the Defendant Police Officers, as set forth above, were deliberately indifferent and demonstrated a reckless disregard to the safety, bodily integrity, well-being, liberty and substantive due process rights of Plaintiff.

58.     By engaging in an unjustified and improper high-speed police pursuit in a highly-trafficked and populated area, during evening rush hour, without reasonable belief that the Suspect

Vehicle's driver/occupants committed a requisite offense and/or posed an immediate threat to public safety, the Defendant Police Officers, as set forth above, consciously disregarded a great risk of serious harm to the safety, bodily integrity, well-being, liberty and substantive due process rights of Plaintiff.

59.     By engaging in an unjustified and improper high-speed police pursuit in a highly trafficked and populated area, during evening rush hour, without reasonable belief that the Suspect Vehicle's driver/occupants committed a requisite offense and/or posed an immediate threat to public safety, the Defendant Police Officers, as set forth above, acted with intent or purpose to cause harm to the public, including Plaintiff.

60.     The Defendant Police Officers knew, or should have known, that by conducting, continuing, and failing to terminate the unjustified and improper pursuit of Suspect's Vehicle, the pursuit was certain to cause physical and/or mental injury to others, including Plaintiff.

61.     The Defendant Police Officers' conduct, as set forth above, demonstrates that the Defendant Police Officers acted with conscious disregard of the great risk of serious harm to Plaintiff.

62.     The Defendant Police Officers' conduct, as set forth above, demonstrates that their conduct affirmatively created an opportunity that otherwise would not have existed for harm to Plaintiff to occur.

63.     The Defendant Police Officers' conduct, as set forth above, demonstrates that the Defendant Police Officers unreasonably and unjustifiably placed Plaintiff in a foreseeably dangerous position.

64. The Defendant Police Officers' conduct, as set forth above, demonstrates that the harm caused to Plaintiff was a foreseeable and fairly direct result of the Defendant Police Officers' conduct.

65. The Defendant Police Officers' conduct, as set forth above, demonstrates that the Defendant Police Officers intentionally disregarded the risks, hazards, and harms presented to Plaintiff by prioritizing their desire and effort to apprehend the Suspect Vehicle for mere traffic violations.

66. The Defendant Police Officers were aware that Plaintiff had a clearly established constitutional right to bodily integrity and right to be free of state-created danger at the time of the incident.

67. The Defendant Police Officers' conduct, as set forth above, violated Plaintiff's constitutional rights, as guaranteed by the United States and Pennsylvania Constitutions, and remediable under 42 U.S.C. § 1983.

68. As a direct and proximate result of the Defendant Police Officers' unreasonable, unjustifiable and unconstitutional conduct, Plaintiff was caused to suffer the horrific injuries described above.

**COUNT II: 42 U.S.C. § 1983**
***MONELL* CLAIM**

**PLAINTIFF, PAGET ALLEN v. DEFENDANT, EDDYSTONE BOROUGH**

69. All preceding paragraphs are incorporated as though fully set forth at length herein.

70. Defendant, Eddystone Borough, as a local government, qualifies as a "person" subject to direct liability under 42 U.S.C. § 1983.

71. At all times relevant hereto, Defendant, Eddystone Borough, acted under color of state law.

72. At all times relevant to this litigation, Defendant, Eddystone Borough, was a policymaker, whose pronouncements were given the effect of state law.

73. Upon information and belief, at the time of the accident at issue, Defendant, Eddystone Borough, maintained and promulgated a policy, directive, and/or custom and practice governing pursuits, which resulted in the Defendant Police Officers engaging in an unjustified, improper, and hazardous high-speed chase in a highly-trafficked and populated area, during evening rush hour, without reasonable belief that the Suspect Vehicle's driver/occupants committed a requisite offense and/or posed an immediate threat to public safety, thereby causing the violation of Plaintiff's rights under the Constitution, 42 U.S.C. § 1983; *Monell v. Dep't of Soc'l Serv's*, 436 U.S. 658 (1978), and their progeny.

74. Defendant, Eddystone Borough's, maintaining and promulgating an inadequate policy directive, practice, and/or custom governing police pursuits was a moving force behind the unconstitutional harm done to Plaintiff.

75. Prior to October 10, 2024, it was a *de facto* policy, practice, and/or custom of Defendant, Eddystone Borough, through their respective police departments, chiefs of police, mayors, and borough counsels, to inadequately supervise and train their police officers, including the Defendant Police Officers, concerning adequate vehicle pursuit policies and practices, thereby failing to adequately discourage constitutional violations on the part of their police officers.

76. Upon information and belief, Defendant, Eddystone Borough, did not require or ensure appropriate training or re-training of police officers who were known to engage in improper, intentional, willful, reckless, and/or negligent behavior, including improper vehicle pursuits and/or other constitutional violations.

77.    It was the *de facto* policy, practice, and/or custom of Defendant, Eddystone Borough, through its respective police departments, chiefs of police, mayors, and borough councils, to inadequately supervise and train their police officers, including the Defendant Police Officers, to intervene and/or report constitutional violations and misconduct committed by their fellow police officers.

78.    Defendant, Eddystone Borough, acting through its respective police departments, chiefs of police, mayors, and borough councils, has adopted and continued to maintain a recognized and accepted policy, custom, and/or practice of systematically engaging in dangerous and improper vehicle pursuits, without regard to the model and accepted vehicle pursuit policies and guidelines, which conduct has resulted in subjecting other persons, including innocent motorists like Plaintiff, to unjustifiable risks of property damage, personal injury, and death.

79.    Defendant, Eddystone Borough, acting through its respective police departments, chiefs of police, mayors, and borough councils, were fully aware of the dangers posed by vehicle pursuits and the resultant need for proper training and supervision of their police officers, but Defendant, Eddystone Borough, was deliberately indifferent to those risks and failed to properly train and supervise their police officers regarding those risks.

80.    As a result of the above-described practices, policies, and/or customs, Defendant, Eddystone Borough's, respective police officers, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory police officers and/or other employees of the Defendant, Eddystone Borough, and that this improper conduct would not be investigated or sanctioned, but would be tolerated and condoned by Defendant, Eddystone Borough.

81.     As a direct and proximate result of Defendant, Eddystone Borough's, unreasonable, unjustifiable, and unconstitutional conduct, Plaintiff was caused to suffer the horrific injuries described above.

## COUNT III: NEGLIGENCE

### PLAINTIFF, PAGET ALLEN v. DEFENDANTS, ROBERT PUGH AND JOHN DOE NOS. 1-10

82.     All preceding paragraphs are incorporated as though fully set forth at length herein.

83.     The claims in this count are brought pursuant to the exceptions to sovereign immunity established by 42 Pa.C.S.A. § 8542(b)(1).

84.     At all times relevant hereto, the Defendant Police Officers owed a duty of reasonable care to foreseeable persons, including Plaintiff, to operate their vehicles in a reasonable manner under the circumstances.

85.     The Defendant Police Officers were jointly and severally careless, negligent and/or reckless in the following respects:

a. Driving at unsafe speeds;
b. Failing to observe and appreciate traffic controls;
c. Failing to observe and appreciate proper speed controls;
d. Failing to observe and appreciate follow traffic signals;
e. Initiating the inherently risky and dangerous high speed police pursuit that they ultimately engaged in without proper justification;
f. Continuing the inherently risky and dangerous high speed police pursuit that they ultimately engaged in without proper justification;
g. Failing to discontinue and terminate the inherently risky and dangerous high speed police pursuit that they ultimately engaged in, despite having no proper justification for the pursuit to occur or proceed;
h. Failing to adhere to applicable policies, regulations, and/or departmental standards concerning police pursuits.

86.     As a result of the carelessness, negligence, gross negligence and reckless conduct of the Defendant Police Officers, Plaintiff sustained serious and permanent disabling personal injuries, including those set forth above.

87.    By conducting themselves as set forth above, the acts and/or omissions of the Defendant Police Officers were substantial factors and/or factual causes and/or increased the risk of harm to Plaintiff.

## COUNT IV: NEGLIGENCE

### PLAINTIFF, PAGET ALLEN v. DEFENDANT, EDDYSTONE BOROUGH

88.    All preceding paragraphs are incorporated as though fully set forth at length herein.

89.    The claims in this count are brought pursuant to the exceptions to sovereign immunity established by 42 Pa.C.S.A. § 8542(b)(1).

90.    At all times relevant hereto, the Defendant Police Officers were acting within the course and scope of their employment with Defendant, Eddystone Borough.

91.    At all times relevant hereto, the police vehicles that was operated by the Defendant Police Officers were under the control of Defendant, Eddystone Borough.

92.    Defendant, Eddystone Borough, itself and through its agents and/or employees, the Defendant Police Officers, were jointly and severally careless, negligent and/or reckless in the following respects:

    a.    Failing to exercise reasonable care and caution under the circumstances at issue;

    b.    Negligent operation of its motor vehicle;

    c.    Reckless operation of its motor vehicle;

    d.    Failing to follow traffic laws;

    e.    Unsafe operation of its motor vehicle;

    f.    Excessive speeding while operating its motor vehicle;

    g.    Failure to have proper policies and procedures in place to address emergency and non-emergency responses by police officers;

    h.    Failing to train and supervise the Defendant Police Officers regarding motor vehicle operation when responding to non-emergency incidents;

    i.    Failing to train and supervise the Defendant Police Officers regarding motor vehicle operation when responding to emergency incidents;

    j.    Failing to implement, train, and supervise police officers on the duty to terminate a vehicle pursuit;

k.  Failing to exercise reasonable care and caution in the operation of vehicles in Defendant's care, custody, and control;

l.  Failing to have proper policies and procedures in place to address the operation of vehicles in Defendant's care, custody, and control;

m.  Failing to train and supervise the Defendant Police Officers with respect to the operation of vehicles in Defendant's care, custody, and control;

n.  Failing to have Defendant's vehicle under proper and adequate control as to not endanger the general public, including Plaintiff;

o.  Failing to operate Defendant's vehicle in accordance with the laws and regulations of the Commonwealth, including obeying speed limits;

p.  Failing to have proper policies and procedures in place to address vehicle operation in accordance with the laws and regulations of the Commonwealth in reasonable and safe manner, including not allowing police officers to drive at excessive speeds;

q.  Failing to train and supervise the Defendant Police Officers with respect to those policies regarding vehicle operation in accordance with the laws and regulations of the Commonwealth, including driving at excessive speeds;

r.  Permitting an inadequately trained and inexperienced police officer to engage in a high-speed incident response;

s.  Failing to properly instruct its supervisor officers in the appropriate method of overseeing motor vehicle responses; and;

t.  Otherwise failing to regard the rights, safety, and property of Plaintiff, including, but not limited to, the appropriate and supporting sections of the Commonwealth of Pennsylvania Motor Vehicle Code; and the policies and procedures Defendant had or should have had in effect at the time of the Crash.

93.  By reason of Defendant, Eddystone Borough's, carelessness, negligence, gross negligence and reckless conduct, Plaintiff sustained serious and permanent disabling personal injuries, including those set forth above.

94.  By conducting itself as set forth above, Defendant, Eddystone Borough's, and/or omissions were substantial factors and/or factual causes and/or increased the risk of harm to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Paget Allen, respectfully requests that the Court enter judgment in her favor and against Defendants on all counts of the complaint, and award relief as follows:

A.  Compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial;

B.  Punitive damages against the Defendant Police Officers for their conduct in an amount to be determined at trial, in order that such award will deter similar behavior by defendants and other law enforcement officers in the future;

C.  Pre-judgment and post-judgment interest and recovery of Plaintiff's costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920, against Defendants, jointly and severally; and

D.  Any and all other relief to which Plaintiff may be entitled.

Respectfully Submitted,

**SALTZ MONGELUZZI BENDESKY PC**

BY:  */s/ Robert J. Mongeluzzi*
ROBERT J. MONGELUZZI
ANDREW R. DUFFY
E. DOUGLAS DISANDRO, JR.
**SALTZ MONGELUZZI BENDESKY PC**
PA Bar ID Nos. 36283/77121/316834
1650 Market Street, 52nd Floor
Philadelphia, Pa 19103
T: (215) 496-8282
rmongeluzzi@smbb.com
aduffy@smbb.com
ddisandro@smbb.com
*Attorneys for Plaintiff*

Dated: August 4, 2026